No. 71,174

ELDON CHRISPENS, DONNA CHRISPENS, JOHNNY L. FARMER, TERRY PARHAM, CHERYL PARHAM, GEORGE RILEY, AND EVELYN RILEY, *Appellees*, v. COASTAL REFINING & MARKETING, INC., a Delaware corporation, *Appellant*.

(897 P.2d 104)

Opinion filed June 2, 1995.

*Joseph W. Kennedy*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Diane S. Worth*, of the same firm, and *Mark J. Tempest*, of Coastal Refining & Marketing, Inc., of Houston, Texas, were with him on the brief for appellant.

*Randall E. Fisher*, of Michaud, Hutton, Fisher & Andersen, of Wichita, argued the cause, and *Donald A. McKinney* and *Chan P. Townsley*, of the same firm, were with him on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: This appeal involves a motion to disqualify counsel under Model Rules of Professional Conduct (MRPC) 1.9(a) (1994 Kan. Ct. R. Annot. 320) and counsel's firm under MRPC 1.10(b)

(1994 Kan. Ct. R. Annot. 321) (imputed disqualification) based on a claimed conflict of interest. After a hearing, the trial court concluded that there was no conflict for counsel and, therefore, denied the motion to disqualify counsel and the firm. Both issues are preserved in this interlocutory appeal.

Christopher Christian was a member of the firm of Turner and Boisseau, Chartered, from 1991 to 1993. During this time, he, along with Eldon Boisseau, represented Coastal Refining and Marketing, Inc., in several cases involving pipeline leakage or spills. In September 1993, Christian left Turner and Boisseau and began working for the firm of Michaud, Hutton, Fisher & Andersen (Michaud firm). In November 1993, the Michaud firm, with Christian signing the petition on behalf of plaintiffs Eldon Chrispens, *et al*, (Chrispens), filed an action against Coastal Refining and Marketing, Inc., (Coastal) alleging that its clients were injured by substances that leaked from a pipeline owned by Coastal.

Before any discovery, Coastal filed a motion to disqualify Christian pursuant to MRPC 1.9(a), and to disqualify the Michaud firm pursuant to MRPC 1.10(b). After an evidentiary hearing with testimony from Eldon Boisseau and Debra Broussard, Coastal's in-house counsel, the trial court determined that the Coastal cases upon which Christian worked when a member of the firm of Turner and Boisseau were not substantially related to the case in which Christian, as a member of the Michaud firm, now brought suit against Coastal. The court held that in the absence of a substantial relationship between the cases, MRPC 1.9(a) did not prevent Christian from suing his former client, Coastal. Based on its decision of no personal conflict, the question of imputed disqualification of the Michaud firm was resolved against Coastal. Additional facts involving the alleged conflict of interest are set forth below.

## JURISDICTION

Before we begin our discussion of the merits, we must first address Chrispens' contention that this court is without jurisdiction. Chrispens contends that this is an interlocutory appeal and "because no controlling question of law will be resolved" the case is

not ripe for appellate consideration. Chrispens relies on the case of *Clemence v. Clemence*, 8 Kan. App. 2d 377, 378, 658 P.2d 368 (1983), wherein the Court of Appeals held that a ruling denying a motion to disqualify counsel is interlocutory in nature because it may be effectively reviewed on appeal of any final judgment.

*Clemence* is correct in its holding that an order refusing to disqualify counsel is interlocutory and not a final order which may be appealed as a matter of right. Unlike *Clemence,* Coastal applied under K.S.A. 60-2102(b) for permission to take an interlocutory appeal. The trial court made the requisite findings and entered a proper order. We considered the findings of the trial court and accepted the appeal. We have jurisdiction to hear this case.

## RULES

The Model Rules of Professional Conduct adopted by the House of Delegates of the American Bar Association on August 2, 1983, were adopted in 1988 by this court as general standards of conduct and practice required of the legal profession in Kansas. Rule 226 (1994 Kan. Ct. R. Annot. 286). It should be noted that both of the rules we deal with in this opinion have been modified by 1989 ABA revisions to Model Rules 1.9 and 1.10. For a discussion of the amendments, see ABA/BNA Lawyers' Manual On Professional Conduct, 51:2002; 1 Hazard & Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 1.10:208 (2d ed. 1990). As pointed out by the manual on professional conduct: "Under the [1989] version of Model Rule 1.10, reference must first be made to Model Rule 1.9(b) to determine whether an individual lawyer who switches private law firms is personally disqualified due to a conflict with a former client of the former firm. If [the attorney] is, then, under Model Rule 1.10(a) the entire new law firm also is disqualified." ABA/BNA Lawyers' Manual On Professional Conduct, 51:2002.

Kansas, along with several other states, operates under the pre-1989 form of Model Rules 1.9 and 1.10. While there may be some differences in application of the pre- and post-1989 rules, the questions for resolution in this area remain essentially the same and involve in the first instance a determination of whether the cases

in which conflicts are alleged are substantially related. Our discussion deals with the current Kansas rules, and we do not discuss what differences may or may not exist by reason of the 1989 ABA revisions of the Model Rules.

Our discussion centers upon two rules: MRPC 1.9, Conflict of Interest: Former Client and MRPC 1.10, Imputed Disqualification: General Rule. The applicable provisions of MRPC 1.9 (a) provide:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." (1994 Kan. Ct. R. Annot. 320.) (Emphasis added.)

The pertinent provisions of MRPC 1.10 provide:

"(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2.

*(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(b) that is material to the matter."* (1994 Kan. Ct. R. Annot. 321-22). (Emphasis added.)

The trial court determined that there was not a substantial relationship between the previous cases Christian worked on while at Turner and Boisseau and the new case filed by Christian against his former client while working at the Michaud firm. This conclusion resulted in the court's denial of the motion for disqualification based upon a conflict of interest. Our first inquiry, and to a large extent, the resolution of this appeal, involves a determination of what is meant by the phrase "substantially related matter" expressed in MRPC 1.9(a) and MRPC 1.10(b). We also need to address the following issues raised by the parties: (1) the burden of proof under both rules before the trial court; (2) the presumptions under both rules before the trial court; and (3) the appropriate appellate standard of review.

## SUBSTANTIALLY RELATED MATTER

One noted authority has commented that gallons of ink have been consumed by those who have tried to determine or explain the test for deciding whether a substantial relationship exists between representations. ABA/BNA Lawyers' Manual on Professional Conduct, 51:215. There is widespread agreement that conflict questions involving former clients should be resolved through application of the substantial relationship test. However, there is no standard definition of what the test should compare in determining whether there is a close connection between the conflicting representations. ABA/BNA Lawyer's Manual on Professional Conduct, 51:225. The Model Rules do not provide a definition, nor do the comments to the rules attempt to define the phrase "substantially related." There is no Kansas case law addressing the meaning and application of the phrase "substantially related matters" as used in MRPC 1.9(a) and MRPC 1.10(b).

The ABA/BNA Lawyer's Manual on Professional Conduct, 51:225 notes:

> "Perhaps the most widely followed formulation of the substantial relationship test is that it compares the 'matter' or 'subject matter' of the former representation to that of the current representation. 'Matter' is the word used in Model Rule 1.9(a), and this word, or the term 'subject matter,' is a popular means of applying the substantial relationship test."

Three separate approaches regarding the substantial relationship test have been used throughout the country. The first approach indicates that the comparison of the former and current representations should center on the facts of each case. The second approach, advanced by the Second Circuit, insists that the inquiry should focus on legal issues and requires the issues involved in the former representation to be "identical" to or "essentially the same" as those presented in the current representation. The relationship under the second approach must be "patently clear." *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978). This approach has not been a view widely adopted. See Nelson, *Conflicts in Representation: Subsequent Representations in a World of Mega Law Firms*, 6 Geo. J. Legal Ethics 1023, 1031

(1993). The third approach is set forth in the case of *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978). The Seventh Circuit blends fact and issue comparisons into a three-step substantial relationship test:

"[D]isqualification questions require three levels of inquiry. Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client." 588 F.2d at 225.

The substantial relationship test developed so that a determination of a conflict of interest could be made without requiring the former client to reveal what confidential information passed from client to lawyer. The following quote from *T. C. & Theater Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 269 (S.D.N.Y. 1953), which did not invent the substantial relationship test but is perhaps the case responsible for popularizing it, highlights the objective of the test:

" 'In cases of this sort the Court must ask whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject of his subsequent representation. If so, then the relationship between the two matters is sufficiently close to bring the latter representation within the prohibition of Canon 6,' the former-client conflicts rule in the ABA Canons of Professional Ethics. Whether using the Model Code or the Model Rules as their guide, courts follow the same path today." ABA/BNA Lawyer's Manual on Professional Conduct, 51:226-27.

Several federal cases interpreting Kansas law have dealt with the phrase "substantially related" as used in MRPC 1.9(a). In *Graham v. Wyeth Laboratories*, 906 F.2d 1419, 1422 (10th Cir. 1990), the Tenth Circuit noted that the term "has acquired the status of a term of art in the general law of attorney conflicts of interest," and defined the term to mean that the "factual contexts of the two representations are similar or related." This same definition was employed in *Geisler by Geisler v. Wyeth Laboratories*, 716 F. Supp. 520, 525 (D. Kan. 1989).

In *Graham v. Wyeth Laboratories*, 906 F.2d at 1422, the Tenth Circuit found that cases were substantially related when the actual context of the two representations were similar or related. In *Koch v. Koch Industries*, 798 F. Supp. 1525, 1536 (D. Kan. 1992), the United States District Court defined the term "substantially related" to mean that the cases "involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct." *Koch* relies upon *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985) (quoting *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 [9th Cir. 1983]); *Trone v. Smith*, 621 F.2d 994, 998 [9th Cir. 1980]). In *Trone*, the court states:

"[T]he underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought. The test [under MRPC 1.9(a)] does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the [MRPC 1.9(a)] is intended to protect." 621 F.2d at 999.

Each case under both MRPC 1.9(a) and MRPC 1.10(b) must be decided on its unique facts and an application of the rule to those facts. This perhaps is another way of saying that the determination of conflict under MRPC 1.9(a) and MRPC 1.10(b) must be made on a case-by-case basis with the decision to be based on the unique facts and application of the rule to facts of that case. Factors which courts have considered in making a determination under MRPC 1.9(a) and MRPC 1.10(b) include: (1) The case involved the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct, *Koch v. Koch Industries*, 789 F. Supp. 1525; (2) the lawyer had interviewed a witness who was key in both cases, *Graham*, 906 F.2d 1419; (3) the lawyer's knowledge of a former client's negotiation strategies was relevant, *SLC Ltd. V v. Bradford Group West, Inc.*, 999 F.2d 464, 466-67 (10th Cir. 1993); (4) the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant, *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo*, 144 F.R.D. 235 (D.N.J. 1992); (5) a common subject

matter, issues and causes of action existed, *In re American Airlines Inc.*, 972 F.2d 605, 614 (5th Cir. 1992); and (6) information existed on the former client's ability to satisfy debts and its possible defense and negotiation strategies, *SLC Ltd. V*, 999 F.2d 466-67. This is by no means an exhaustive list but merely reflects that the determination is oftentimes an evaluative determination by the trial court based upon the unique facts of the case. In some cases, one factor, if significant enough, may establish that the subsequent case is substantially similar. For example, if the former representation involved defending the client on a criminal charge and the attorney is thereafter elected as a prosecutor and then seeks to prosecute the same client upon a charge connected with the prior defense, the former representation alone makes the disqualification an easy question.

On the other hand, in cases less clear, the trial court must balance the previous client's right of confidentiality, the right of having a reasonable choice of legal counsel, and the right of lawyers to form new associations and take on new clients when leaving a previous association. See *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 808 P.2d 1369 (1991); *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099 (1989). Given the mobile society we live in and the very real need to preserve professional integrity as well as the real needs of those citizens who rely upon attorneys for assistance, the balancing of the competing interests becomes very difficult at times. Both the wording of the rules involved and the somewhat elusive test of "substantially related" provide the court with an opportunity to make a circumspect decision concerning conflict of interest. We reject the narrow Second Circuit view, which requires that a substantial relationship must be patently clear and disqualification is required only when the issues involved are identical or essentially the same. See *Government of India*, 569 F.2d at 739-40. We adopt a rule which requires the trial court to make a determination after considering the facts surrounding the two representations.

BURDEN OF PROOF

MRPC 1.10(b)

Our previous cases of *Parker v. Volkswagenwerk Aktiengesellschaft,* 245 Kan. 580, and *Lansing-Delaware Water District v. Oak Lane Park, Inc.,* 248 Kan. 563, both involved imputed disqualification motions under MRPC 1.10. In *Parker,* disqualification was sought against an attorney who had been previously employed by a firm that represented the client being sued by another firm in which the same attorney now worked. In *Lansing-Delaware,* disqualification was sought against an attorney who previously had been a member of a firm that represented a client but who had since become employed by a firm that was suing that client. *Parker* holds that when a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment. *Parker* also states:

"The district court must determine motions for disqualification on a case-by-case basis, *remembering that the burden of proof lies with the attorney or firm who is sought to be disqualified.* If it is determined that the attorney gained material and confidential information during the course of his or her previous employment, then both the attorney and the firm with whom he or she is presently associated are disqualified." (Emphasis added.) 245 Kan. at 589.

No authority is cited in *Parker* for its statement that the burden of proof lies with the attorney or firm who is sought to be disqualified. This proposition is also contrary to the general rule in Kansas regarding burden of proof. See Anderson, *Motions to Disqualify Opposing Counsel,* 30 Washburn L.J. 238, 257 (1991). However, we revisited this question and reaffirmed our position in *Lansing-Delaware.* 248 Kan. at 570. As noted in *Lansing-Delaware,* there is support for this proposition in the Comment to MRPC 1.10, which states: "Application of paragraphs (b) and (c) depends on a situation's particular fact. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought." (1994 Kan. Ct. R. Annot. 324).

For purposes of MRPC 1.10(b), the party best able to bear the burden of showing that the attorney did not gain material and confidential information is the firm with whom the attorney is currently associated. We hold that, consistent with our previous holdings in *Parker* and *Lansing-Delaware,* the burden of proof under MRPC 1.10(b) rests with the party against whom imputed disqualification is alleged.

MRPC 1.9(a)

MRPC 1.9 deals with the disqualification of an individual attorney. There is no requirement under this rule as there is under MRPC 1.10(b) to establish that the attorney gained material and confidential information during the course of his or her previous employment. As stated in *Koch v. Koch Industries,* 798 F. Supp. at 1530-1533, disqualification under MRPC 1.9(a) is dependent upon the party moving for disqualification to establish that (1) the attorney whose disqualification is sought formerly represented them in a matter, (2) the matter is substantially related to a matter in which the attorney now seeks to represent a new client, and (3) the new client's interest is substantially adverse to the interest of the party seeking disqualification. We hold that the burden of proof under MRPC 1.9(a) is upon the party alleging conflict and moving for disqualification. See *LeaseAmerica Corp. v. Stewart,* 19 Kan. App. 2d 740, Syl. ¶ 6, 876 P.2d 184 (1994).

## PRESUMPTIONS

The primary inquiry under MRPC 1.9(a) is whether the cases where conflict has been alleged are substantially related. Normally, this inquiry is made without the aid of a hearing. The reason for a hearing in this case was that Coastal sought relief not only under MRPC 1.9(a) (disqualification of Christian who had formerly represented Coastal) but also under MRPC 1.10(b) (imputed disqualification of the entire Michaud firm based upon allegations that Christian acquired material, confidential information). *Parker,* 245 Kan. at 589, and *Lansing-Delaware,* 248 Kan. at 570-72, require the court to hold a hearing when imputed disqualification is sought

under MRPC 1.10(b). No such requirement exists under MRPC 1.9(a).

The question under MRPC 1.9(a) regarding presumptions is: Once a matter has been found to be substantially related under MRPC 1.9(a) and all other requirements of the rule have been satisfied, does this result in automatic disqualification of the subject attorney? Put another way, should the attorney against whom conflict is claimed be allowed to rebut with evidence that no material, confidential information was acquired? This would be allowed under MRPC 1.10(b). It is important to keep in mind that MRPC 1.10(b) requires a showing that there has been acquisition of material, confidential information.

The answer to the question posed in the last paragraph is twofold. First, if the disqualification motion is advanced solely under MRPC 1.9(a), an irrebuttable presumption arises that in cases "substantially related," the former client revealed confidential information requiring the attorney's disqualification. Second, if the disqualification motion is advanced under MRPC 1.9(a) and MRPC 1.10(b), as in this case, the reason for an irrebuttable presumption no longer exists because we require an evidentiary hearing when imputed disqualification under MRPC 1.10(b) is sought. Under these latter circumstances, disclosure of alleged confidential information will result.

## A. Proceeding Under MRPC 1.9(a)

Once it has been established that an attorney has formerly represented a client in a matter and seeks to represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client, an irrebuttable presumption arises that the attorney acquired confidential information in the former representation and is disqualified from representing the latter client. MRPC 1.9(a), by its express terms, provides that an attorney who has represented a client in a matter "shall not" represent an adverse party in the same or a substantially related matter. This is consistent with the substantial relationship test as used in the majority of jurisdictions. In *Koch*, the federal district court stated:

"If a substantial relationship is found, an irrebuttable presumption arises that the former client revealed facts requiring the attorney's disqualification. [*Trone v.*] *Smith*, 757 F.2d at 1100. The court need not inquire into whether the confidential information was actually revealed or whether the attorney would be likely to use the information to the disadvantage of the former client. *Green v. Montgomery County, Ala.*, 784 F. Supp. 841, 844 (M.D. Ala. 1992); *Carlson v. Langdon*, 751 P.2d 344, 348 (Wyo. 1988). To conduct such an inquiry would frustrate the former client's interest in the confidential information. *Emle Industries Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973)." 798 F. Supp. at 1536.

We believe the reasoning of *Koch* is sound. The reason for this irrebuttable presumption, as noted in *Koch*, is rooted in the idea of attorney loyalty:

" '[MRPC 1.9(a)] is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. [Citation omitted.] Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained.' " 798 F. Supp. at 1532 (quoting *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 [3d Cir. 1984], *cert. denied* 472 U.S. 1008 [1985]).

Another very important consideration under MRPC 1.9(a) is whether the attorney *formerly represented* the client. Even when a substantial relationship between the matters has been found to exist, the scope and the degree of representation by the attorney against whom the conflict is alleged must be considered.

This idea is best reflected in the case of *Silver Chrysler Plymouth Inc. v. Chrysler Mot. Corp.*, 518 F.2d 751, 756-57 (2d Cir. 1975), wherein the court stated: "But there is a reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery. . . . Under the latter circumstances the attorney's role cannot be considered 'representation.' " 518 F.2d at 756-57.

In order for the automatic disqualification to take place under MRPC 1.9(a), there must be a showing that the attorney whose disqualification is sought actually represented the former client, not just that his or her law firm did so. This allows attorneys on the periphery of issues to avoid being cast as having represented a

client when, in fact, they merely belonged to the firm. This also corresponds to the Comment to MRPC 1.9, which states: "The lawyer's involvement in the matter can also be a question of degree." (1994 Kan. Ct. R. Annot. 320).

The trial court, when dealing solely with an MRPC 1.9(a) motion for disqualification, should not hold a hearing. To hold a hearing when disqualification is sought solely under MRPC 1.9 would be to frustrate the reason underlying the rule, which is to prevent disclosure of the confidential information the rule is designed to protect. The trial court should make the determination of whether the attorney formerly represented the client in a previous matter and whether the matters are substantially related on the basis of the record, additional documentation provided by counsel regarding the previous representation, and arguments of counsel. If the trial court determines that the matters are substantially related, an irrebuttable presumption arises that the attorney acquired material, confidential information and is disqualified under MRPC 1.9 from representing the new client against the former client.

Where a lawyer has been directly involved in a specific transaction, subsequent representation of clients with materially adverse interests in a matter substantially related to the specific transaction is prohibited. The burden upon a motion for disqualification under this rule is upon the moving party asserting the conflict. See MRPC 1.9, Comment (1994 Kan. Ct. R. Annot. 320-21).

### B. Proceedings Under MRPC 1.9(a) and MRPC 1.10(b)

When motions for disqualification are advanced under MRPC 1.9(a) and MRPC 1.10(b) against the attorney and the attorney's new firm, *Parker* provides that "the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment." 245 Kan. at 589. The hearing will result in the disclosure of the very information MRPC 1.9(a) was designed to protect from disclosure. Under these circumstances, the reason for an irrebuttable presumption no longer exists. We hold that in this type of proceeding there is no longer an irrebuttable presumption and the ultimate determination of the motion to disqualify the at-

torney under MRPC 1.9(a) and the firm under MRPC 1.10(b) will depend upon whether material, confidential information has been acquired by the attorney in his or her former representation. If it is established that such information has been acquired, then under *Parker*, 248 Kan. at 570, and *Lansing-Delaware*, 245 Kan. at 589, "both the attorney and the firm with whom he or she is presently associated are disqualified." If it is established that no such information has been acquired, then neither the attorney nor the firm with whom he or she is presently associated are disqualified.

### C. Proceeding under MRPC 1.10(b)

When an attorney changes firms and the disqualification of his new firm is sought, the applicable rule is MRPC 1.10(b). The attorney's new firm is prohibited from representing a client adverse to a client which the attorney *or his or her previous firm* represented *and* about whom the attorney has acquired confidential information. MRPC 1.10(b). Under this circumstance, the rule announced in *Parker*, 245 Kan. at 589, is applicable:

"Where a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment. To support a disqualification order, the district court must make a specific factual finding that the attorney had knowledge of material and confidential information. . . .

". . . If it is determined that the attorney gained material and confidential information during the course of his or her previous employment, then both the attorney and the firm with whom he or she is presently associated are disqualified." 245 Kan. at 589.

The district court must determine motions for disqualification on a case-by-case basis, and the burden of proof is upon the firm sought to be disqualified. No presumption exists under MRPC 1.10. See 245 Kan. at 589; MRPC 1.10, Comment (1994 Kan. Ct. R. Annot. 323-24).

### STANDARD OF REVIEW

Chrispens cites *Lansing-Delaware* for the proposition that when an appellate court reviews a trial court's decision on a motion to disqualify, "[a]n appellate court must accept as true the evidence

and all inferences to be drawn therefrom which support or tend to support the findings of the trial court and must disregard any conflicting evidence or other inferences that might be drawn therefrom." 248 Kan. at 573. Chrispens then concludes that the determination of whether there is evidence of a "substantial relationship" between the representations at issue is a factual one. Numerous cases are then cited by Chrispens concerning the scope of appellate review on factual determinations by a trial court. We acknowledge that the scope of review for factual findings is a deferential one.

Chrispens argues that the determination of whether there exists a "substantial relationship" is a highly fact-specific inquiry; that the trial court in this case, based on evidence presented, made a finding that the cases were *not* "substantially related"; and that this determination is subject to an abuse of discretion standard. Chrispens argues that since there is substantial competent evidence of record to support this factual determination, there is no abuse of discretion and we must affirm.

In the area of disqualification of counsel under ethical rules adopted by this court, the determination of whether under given facts application of the rules to those facts requires disqualification of the attorney or firm is a question of law. As the Fifth Circuit recognized in *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992):

"Assuming arguendo that the district court made findings on these contested questions of fact, it is clear that the court was guided by a particular reading of the Texas Disciplinary Rules in making these relevant factual determinations. Whatever deference due the court's factual findings, little or no deference is proper in reviewing its interpretation of ethical rules. We have recently held that a 'district court's interpretation of the state disciplinary rules [is] an interpretation of law, subject essentially to *de novo* consideration.' "

Our decision in *Lansing-Delaware* highlights our responsibility when reviewing a trial court determination in this area. "When the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence *and whether the findings are sufficient to support the trial court's conclusions of*

*law.*" (Emphasis added.) 248 Kan. at 572. In *Lansing-Delaware*, there existed a dispute regarding the facts. Two attorneys, both initially working in the same firm, testified. One of these attorneys left the firm and became employed by a second firm. The question for resolution was whether the attorney going to the new firm had obtained confidential information that would preclude him as well as the new firm from representing a client in an action against the old firm's client.

One attorney testified that no confidential information was exchanged. The other attorney testified that detailed discussions occurred involving confidential information. While we noted that the factual findings of the trial court lacked specificity, the trial court determined that confidential information was exchanged and granted the motion for disqualification. The trial court obviously accepted the version related by the attorney who testified that there was an exchange of confidential information. It was this factual determination by the trial court that we referred to when we determined that such findings, if supported by substantial competent evidence, will not be overturned on appeal.

Once it was established that the trial court's factual determination was supported by substantial competent evidence, it was established that confidential information was exchanged. Thus, in *Lansing-Delaware*, the factual determination by the trial court effectively decided the case even though we needed to determine on appeal whether the facts as found supported the trial court's conclusions of law.

There are two parts to the scope of review set forth in *Lansing-Delaware*. This court must first determine whether the trial court's findings of fact are supported by substantial competent evidence and second, whether the findings are sufficient to support the trial court's conclusions of law. 248 Kan. at 572. The first is a deferential standard of review, and the second involves a question of law based upon given facts.

Unlike *Lansing-Delaware*, there is no dispute concerning the basic facts surrounding Christian's involvement with Coastal while associated with both firms. The parties differ as to the application of the MRPC to these facts. While the trial court mentions findings

of fact and conclusions of law in its oral decision from the bench, the conclusions of the trial court that the matters are not substantially related is a conclusion of law based on largely undisputed facts. Our review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

It can be seen that the determination of whether the cases are substantially related is a legal conclusion based upon the facts of the case. Having set forth the law regarding conflicts under MRPC 1.9(a) and MRPC 1.10(b), it is now necessary to examine in detail the facts regarding Christian's representation of Coastal while at Turner and Boisseau and his representation of Chrispens against Coastal while at the Michaud firm.

## FACTS

Christopher P. Christian first joined the Michaud firm in September of 1993. From the summer of 1991 until August of 1993, Christian was employed by the law firm of Turner and Boisseau, Chartered. Both firms are located in Wichita. Turner and Boisseau had represented Coastal in four cases that also involved, as this case does, alleged pipeline leaks: *Warner v. Coastal*, No. 92C2755 (Sedgwick County District Court); *Ebenkamp v. Coastal*, No. 92C1963 (Sedgwick County District Court); *Jerke v. Coastal*, No. 92C1964 (Sedgwick County District Court); and *Fisher v. Coastal*, No. 92-1422-B (United States District Court for the District of Kansas). While at the Turner and Boisseau firm, Christian was involved in the representation of Coastal in each of the above cases.

Within two months of leaving the firm of Turner and Boisseau, Christian, on behalf of the Michaud firm, filed a petition in this case, naming Coastal as a defendant. It is undisputed that Christian did not seek or obtain Coastal's consent prior to the filing of the suit. Coastal, through its counsel, asked Christian and the Michaud firm to withdraw based upon a conflict, which request was refused. Coastal then filed a motion to disqualify Christian and the Michaud firm based upon alleged conflict of interest. An evidentiary hearing was held. Coastal presented its evidence and rested. Chrispens moved to dismiss the disqualification motion. The trial court

granted the motion to dismiss, finding that the cases were not substantially related.

The parties are in agreement on the basic facts. They do not argue about what the facts are but rather argue about what the facts mean.

Christian represented Coastal while at Turner and Boisseau in each of the cases set forth above. Initially, Christian was the "monitoring attorney" on the *Jerke* and *Ebenkamp* cases. Eldon Boisseau had overall responsibility for litigating cases in the office but assigned a monitoring attorney on every case so that, technically, there would be two lawyers on every case. According to Boisseau, the monitoring attorney is responsible for most of the pleadings, working with the trial specialist (paralegal) and other day-to-day operations concerning the development of the litigated case.

Early in the above cases, Boisseau became entirely too busy with his own schedule and had to rely on Christian more and more. Boisseau testified that he had to implore general counsel for Coastal, Debra Broussard, to allow Turner and Boisseau to use Christian for a lot of things that he, Boisseau, was personally employed by Coastal to accomplish. Broussard agreed and felt comfortable because she understood that Christian was not "25 years old and just out of law school." Christian became more deeply involved in the representation of Coastal on both the *Jerke* and *Ebenkamp* cases as well as other Coastal cases.

The cases in which Christian was involved while representing Coastal concerned alleged pipeline leaks in the Wichita area. The case Christian was involved with while at the Michaud firm, although involving different chemicals, did involve the pipelines connected to the Coastal's Wichita refinery. All cases involved the same legal theories, which in most cases may not be particularly significant. However, all the cases also involved issues relating to Coastal's Wichita area operations, practices, and procedures; its maintenance practices and procedures; and its procedures for detecting and dealing with pipeline leaks. In addition to the same record-keeping practices for all cases, the same management personnel were involved in all cases: Glen Berg, head of the Coastal maintenance crew; Dick McPherson, in charge of Coastal opera-

tions; Randy Newcomer, the Coastal refinery manager; Bo Burris, head of Coastal remediation; and Ray Harrington, Lynn Richardson, Jay Rondeau, and Gene Meyer, Coastal environmental personnel. Christian had contact with all of the management personnel while working for Turner and Boisseau. In some instances, his contact may have been very insignificant, but he nevertheless had access to all documentation that was available to Eldon Boisseau and general counsel for Coastal. These documents necessarily concerned Coastal's defense theories as well as information concerning the witnesses who would be called to support Coastal's position.

Christian did have extensive contact with Gene Meyer, who would necessarily be a key witness in the Chrispens case; contact with Glen Berg, in charge of maintenance of the pipelines, who played a substantial part in the four previous lawsuits handled by Turner and Boisseau and would play an important part in the Chrispens case; and contact with Dick McPherson, who was responsible for operational control of the line. Christian met and conferred with Dick McPherson in preparing for a mediated settlement conference in the *Fisher* case and met with and conferred with Randy Newcomer in preparing for a mediated settlement conference in *Ebenkamp* and *Jerke*. Christian also conferred with Gene Meyer on several questions involving both compensatory and punitive damages. During the course of representing Coastal, Christian acquired knowledge of the strength and weaknesses of Coastal personnel who would be witnesses in the Chrispens case.

Christian's involvement while at Turner and Boisseau amounted to interviewing and preparing key witnesses for depositions, taking depositions of key witnesses, consulting with Coastal's in-house counsel, and negotiating a settlement in *Jerke* and *Ebenkamp*. In addition, Christian participated in the development, strategy, and tactics of all of the above cases. The evidence establishes that each of the four cases in which Christian was involved while at Turner and Boisseau involved the same key Coastal employee witnesses who would necessarily become key witnesses in the Chrispens case. While some of this information may have become public knowledge by reason of depositions and live testimony in court, not all this information was public information, but instead was confiden-

tial information obtained by Christian while employed at Turner and Boisseau. Christian also obtained information concerning the business practices of Coastal with regard to how it handles pipeline leaks and with its record-keeping practices and its views on handling pollution litigation.

Numerous exhibits were admitted into evidence. Exhibit No. 1 was a letter from the Turner and Boisseau office dated September 17, 1992, bearing Boisseau's signature. This exhibit is a litigation plan—a plan of strategy on how the *Jerke* and *Ebenkamp* cases were to be defended, and it was prepared at the request of Coastal. While Boisseau did not recall whether he discussed the details of this plan with Christian, Christian would have had access to the letter, and in accord with common practice Boisseau would have discussed the contents of this letter with Christian.

Exhibit No. 7 is a letter to general counsel for Coastal, Debra Broussard, signed by Christian and Boisseau. It is a status report and forwards the brief on a punitive damage claim in the *Ebenkamp* and *Jerke* cases. Christian handled the punitive damage issue in both of these cases; he supervised and wrote the brief, or supervised the writing of the brief and the responses to the arguments with regard to the punitive damage claim. In the second paragraph of Exhibit No. 7, Christian states, "I would request you start obtaining the relevant financial information concerning Coastal's profits for the last five years." Boisseau recalls that this was not public information but confidential information gathered by Christian concerning the punitive damage claim. The fact that this financial information was confidential information acquired by Christian during the course of his representation of Coastal was confirmed by general counsel for Coastal, Debra Broussard.

Moreover, Broussard related the following with reference to the time that Christian spent in representing Coastal Refinery and Marketing while a member of the Turner and Boisseau firm:

"Q. All right. And what was the total number of hours spent by Mr. Christian on Coastal matters?
"A. The total for all case is 147.5 hours.
"Q. Well, that—isn't that the total from May 1993 on?
"A. Yeah, I'm sorry, the total's 172.6 hours.

"Q. And, of that, 147 and a half hours was spent from May of '93 forward; is that correct?

"A. That's correct.

"Q. And that's about 85 percent of his time was spent in the last three months; is that right?

. . . .

"A. Most of that would have been getting ready for *Ebenkamp* trial and helping us with the *Fisher* mediation."

In response, Chrispens notes that plaintiffs' case is a Superfund class action for personal injuries and property damage and is substantially different from the previous cases in which Christian represented Coastal, wherein only property damage was involved. Chrispens points out that this case involves different and multiple defendants, including Farmland Industries, Wilco Paint, Midland Refining Company, and others. *Warner, Jerke, Ebenkamp*, and *Fisher* did not have multiple defendants or pollutants, and each involved a single, identified pollutant from a specific, recognizable leak; whereas, it is contended that the Chrispens case involved "various hazardous, noxious, and harmful substances," including Benzene and various hydrocarbons.

Chrispens also contends that plaintiffs' case involves a different and wholly distinct site than those sites involved in *Warner, Jerke, Ebenkamp*, and *Fisher*. The site in the Chrispens case contains 280 homes and 60 businesses, as opposed to previous cases which involved basically rural sites—small in comparison to the site involved in the Chrispens case. Chrispens contends that there are substantially different factual and legal issues and strategies involved in this case based upon the size of the site, the complexity of the site, and the complexity of the issues and the number of defendants involved in this case. Chrispens argues that different defense counsel will be involved in this case in that the case is defended by Morris, Laing, Evans, Brock & Kennedy, Chartered, whereas Turner and Boisseau defended the *Ebenkamp, Jerke, Warner*, and *Fisher* cases. Chrispens also contends that a different in-house counsel for Coastal is involved in this case. Debra Broussard was in-house counsel for the previous cases, while Mark Tempest is the counsel for the Chrispens case.

However, when Broussard was asked whether it would make a difference that Mark Tempest was going to be general in-house counsel for Coastal in the Chrispens case, she stated:

"A.  No. Mark would handle the lawsuits in a similar fashion that I would. We're given the same marching orders.
"Q.  So in effect, you have the same client with the same attitude and basically the same directions and instructions?
"A.  That's correct. He and I report to the same boss, we get the information from the same clients."

Chrispens also contends that Christian's involvement in the prior matters was limited in scope and concerned tasks specific to the facts of each case, not to matters substantially related to the Chrispens case. While it is true Boisseau testified that he was to have primary responsibility for representation of Coastal, it also is apparent from the evidence that Boisseau became extremely busy and Christian had to become more deeply involved in the representation of Coastal. Based upon the undisputed facts of record, we have no hesitancy in concluding that Christian was deeply involved in the representation of Coastal in the cases of *Warner, Jerke, Ebenkamp,* and *Fisher.* In spite of the efforts of Chrispens to characterize Christian's involvement as peripheral or insignificant, his representation of Coastal in the above cases was, in the true meaning of the term, full legal representation.

Chrispens further contends that Christian's contact with witnesses in the previous cases while working for Turner and Boisseau was not sufficient to establish a substantial relationship between the two cases. Chrispens' brief then details from the record the contacts Christian made with all witnesses, including Glen Berg, Dick McPherson, Randy Newcomer, Bo Burris, Lynn Richardson, Ray Harrington, and Gene Meyer. Our consideration of the record convinces us that sufficient contact was had with key Coastal management personnel to provide Christian with confidential information concerning the strengths and weaknesses of witnesses important to the Chrispens case.

After the trial court heard the evidence presented by Coastal, it dismissed Coastal's motion to disqualify based upon its conclusion that the cases were not substantially related. Thus, under MRPC

1.9(a), Christian was not disqualified nor was the Michaud firm under MRPC 1.10(b). Chrispens notes that no evidence was presented on behalf of Christian or the Michaud firm, since the trial court dismissed the defendant's motion before the plaintiffs were required to put on any evidence. It must be noted that the motion being considered by the trial court involved not only a motion to disqualify Christian under MRPC 1.9(a), but also a motion to disqualify the Michaud firm under MRPC 1.10(b). By denying the motion, the trial court resolved both questions.

## TRIAL COURT DECISION

The trial court, in this case, at the close of the evidence stated:

"I'll find as a matter of law that Coastal's record keeping practices or lack thereof—as really more appropriate for this case—Coastal's settlement tactics and strategies in defending these types of cases, and the legal theories that plaintiffs might bring such—in cases such as these are not factors that would make these—this case and the *Jerke/[Eben]kamp/Warner or Fisher* or *Warner/Campbell* cases substantially related.

"The reason that I asked the question about the witnesses is, is that I read *Graham v. Wyeth* for the proposition that having interviewed a key witness or witnesses in a prior representation would be stuff to make the cases substantially related.

"I'll find as a matter of fact that the defendant has failed to establish its burden of proof to show that Mr. Christian interviewed Mr. McPherson, Mr. Berg, or Mr. Meyer in this case on matters that would be substantially related to the facts of this case. These are three separate pipeline incidents. They are all pipeline; one of the others does involve crude, this one involves crude. And in all probability one or more of these three witnesses will probably testify in this case when it goes to trial or certainly his deposition will be taken. But I don't find that the cases are substantially related, and I'll deny the motion."

While couched in language that would seem to suggest that it is making some findings of fact, the decision of the trial court amounts to conclusions of law based upon the evidence presented. The trial court made no "specific factual finding" as contemplated by *Parker* and *Lansing-Delaware*.

## CONCLUSION

Coastal's burden under MRPC 1.9(a) was to show that (1) Christian formerly represented it in a matter, (2) that the matter is sub-

stantially related to the matter in which Christian now seeks to represent a new client, and (3) that the new client's interests are substantially adverse to the interests of Coastal.

The essential facts are not in dispute. As we have stated above, the trial court's conclusion that the matters were not substantially related is a question of law subject to de novo review. Contrary to the trial court's conclusion, we conclude as a matter of law that the matter between the two representations were substantially related. We base this conclusion on the facts that all cases involved the same client; that the matters or transactions in question are relevantly interconnected and reveal Coastal's pattern of conduct; that Christian had interviewed and acquired valuable knowledge of the weaknesses and strengths of key witnesses who will be key witnesses in the Chrispens case; that Christian obtained confidential financial information in representing Coastal concerning the settlement of a punitive damage claim in the *Jerke/Ebenkamp* cases, which information is material and relevant in the Chrispens case; that Christian gained material, confidential information of Coastal's negotiations strategies which may become valuable in the Chrispens case; that all cases involve the common subject of pipeline leaks or spills from Coastal's Wichita refinery; and that the previous representation by Christian of Coastal terminated less than three months from the time Christian initiated the Chrispens action against Coastal.

Coastal met its burden of proof under MRPC 1.9(a). Coastal further moved for disqualification of the Michaud firm under MRPC 1.10(b). The burden of proof under this rule lies with the firm against whom disqualification is sought. We held in *Parker* that "[w]here a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment." 245 Kan. at 589. The purpose of the hearing before the district court is to determine whether the attorney acquired material and confidential information during the course of his employment. "If it is determined that the attorney gained material and confidential information during the course of his or her previous employment,

then both the attorney and the firm with whom he or she is presently associated are disqualified." 245 Kan. 589. The converse of this statement would also be true, that if no confidential information was obtained then neither the attorney or the firm with whom he or she is presently associated with are disqualified.

The trial court determined that the matters were not substantially related and, therefore, did not need to resolve the question of imputed disqualification under MRPC 1.10(b). However, both questions were before the trial court and resolved against Coastal. Both questions are before us in this appeal. Our reversal of the trial court decision that the matters were not substantially related requires us to consider whether the Michaud firm met its burden under MRPC 1.10(b).

Coastal presented its evidence in the form of documents, exhibits, and the live testimony of Eldon Boisseau and Debra Broussard, general counsel for Coastal. Chrispens elected not to put on any evidence but did cross-examine Coastal witnesses and comment upon all documentary evidence submitted by Coastal.

Based on the record before us, we conclude that Christian, while employed at Turner and Boisseau, represented Coastal in cases that are substantially related to the Chrispens case; that Coastal's interests are materially adverse to Chrispens; and that Christian acquired material and confidential information during the course of his employment with Turner and Boisseau. Thus, both Christian, under MRPC 1.9(a), and the Michaud firm, under MRPC 1.10(b), with whom he is presently associated, are disqualified. See *Parker*, 245 Kan. at 589.

In the appellees' brief, Chrispens states that "[n]o evidence was presented on behalf of Christian or Michaud, Hutton, Fisher & Andersen, as the trial court dismissed defendant's motion before plaintiffs were required to put on any evidence." Under the unique circumstances of this case where the trial court has held a partial hearing and the evidence from that hearing establishes that the attorney whose disqualification is sought "had acquired information protected by Rule 1.6 and 1.9(b) that is material to the matter" (MRPC 1.10[b]), we do not deem it appropriate to remand for yet another hearing before the trial court. As we have said above, the

dispute between the parties lies not in the facts but in the interpretation of those facts. We have set forth some of the undisputed facts which establish the conflict. Certainly there are more facts in the record supporting the conclusion that a conflict exists under both MRPC 1.9(a) and MRPC 1.10(b). The facts in the record establish conflict as a matter of law under both rules.

Chrispens argues that:

"[t]he decision to disqualify an attorney chosen by a party to represent him in a lawsuit is of serious concern and the court's inherent power to do so should only be exercised where the integrity of the adversary process is threatened. Even then, the court should not act unless 'the offending attorney's conduct threatens to "taint the underlying trial"' with a serious ethical violation.'" (Quoting *Beck v. Board of Regents of the State of Kansas*, 568 F. Supp. 1107, 1110 [D. Kan. 1983]).

The Supreme Court of West Virginia has commented that while disqualification of counsel is aimed to protect one attorney-client relationship, it destroys another attorney-client relationship by depriving a party of representation of its own choosing. Hence, "such motions should be viewed with extreme caution." *Garlow v. Zakaib*, 186 W. Va. 457, 461, 413 S.E. 2d 112 (1991).

Chrispens also points out that oftentimes motions to disqualify are used as a disruptive trial tactic. Chrispens further observes that the Kansas Court of Appeals has recently held: " 'Motions to disqualify [counsel] "should be viewed with extreme caution, for they can be misused as a technique[ ]of harassment." ' " *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 750, 876 P.2d 184 (1994). Motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice. " 'The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances.' " 19 Kan. App. 2d at 750.

Finally, Chrispens contends that disqualification of the Michaud firm could have substantial and irreparable adverse consequences for an entire class of plaintiffs. Not many attorneys are experienced in environmental cases, nor are many law firms willing to represent plaintiffs in complex environmental litigation. The adverse consequences, Chrispens contends, is exactly what Coastal is banking on. Even if the plaintiffs' class is able to retain other counsel, disqual-

ification would likely cause the plaintiffs substantial losses of time, money, and legal expertise, and diminished chances of success on the merits.

We are not unmindful of the above considerations. All of those considerations are important factors when ruling on a motion for disqualification. We pause to note that no such abuses as are suggested above are present in this case. The disqualification notice and motion in this case were filed immediately before any discovery had commenced. The issue was presented in a factual context at a time appropriate for disposition.

Reversed and remanded with directions to grant the motion for disqualification.

ABBOTT, J., not participating.

DAVID PRAGER, C.J., Retired, assigned█