UNITED STATES of America

v.

Merritt G. STANSFIELD, Defendant.

No. 3:CR–94–0138.

United States District Court,
M.D. Pennsylvania.

Dec. 23, 1994.

As Corrected Jan. 11, 1995.

Kim Douglas Daniel, Asst. U.S. Atty., Harrisburg, PA, for the U.S.

David J. Foster, Lemoyne, PA, for defendant.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On June 14, 1994, a grand jury sitting in the Middle District of Pennsylvania returned a twelve-count indictment against defendant Merritt G. Stansfield, Jr. The indictment charges defendant with: mail fraud (Counts I–IV); use of fire to commit a federal felony (Count V); engaging in monetary transactions in property derived from specified unlawful activity (Counts VI–X); and witness tampering (Count XI). The indictment also states a count for forfeiture of property derived from money laundering (Count XII). Jury selection is scheduled for January 3, 1995.

Defendant is represented before this court by David J. Foster, Esquire, of the law firm of Costopoulos, Foster & Fields. Another member of that firm, Leslie M. Fields, Esquire, has been subpoenaed by the government to testify against defendant at trial. On December 2, 1994, defendant moved to quash the subpoena of Attorney Fields. On December 12, 1994, the government moved to disqualify defense counsel, including the entire firm of Costopoulos, Foster & Fields, from representing defendant in this matter, based upon conflicts of interest.

Due to the pendency of jury selection, the court expedited matters, and the motions are ripe for disposition.

### DISCUSSION:

#### I. STATEMENT OF FACTS

According to the indictment, defendant and his wife were the owners of a residence located in Duncannon, Pennsylvania. Defendant had sole possession of the residence during divorce proceedings, and was obligated to compensate his wife. The residence was covered by an insurance policy issued by the Erie Insurance Group of Mechanicsburg, Pennsylvania.

On December 19, 1990, the residence was destroyed by fire. The indictment charges that defendant set the fire for the purpose of defrauding Erie of the insurance proceeds, and in fact received some $377,544.00 for the residence and purported contents. The indictment also notes that "a second individual" travelled with defendant on the night the fire occurred.

When presenting his claim to Erie, defendant was represented by Attorney Fields. In fact, the indictment specifically states that defendant caused to be delivered to Attorney Fields three checks in an amount totalling $166,022.00. *See* Indictment, Counts III, IV. There is, however, no indication of any wrongdoing on the part of Attorney Fields or Costopoulos, Foster & Fields.

Another attorney with Costopoulos, Foster & Fields, Charles Rector, Esquire, represents Clare E. Stansfield, defendant's brother. Clare Stansfield is awaiting sentencing in state court for unrelated narcotics charges. Clare Stansfield was represented by another attorney, David T. Kluz, Esquire, before this court on firearms and racketeering charges, apparently related to the drug offenses. A jury acquitted Clare Stansfield of those charges. *United States v. Clare E. Stansfield*, No. 3:CR–94–0087 (M.D. Pa.

judgment of acquittal entered June 15, 1994) (Vanaskie, J.).

Clare Stansfield is cooperating with the government, and is expected to testify at trial against defendant. He previously testified before the grand jury which returned the indictment. The government summarizes Clare Stansfield's testimony as follows: "The defendant's brother, Clare Stansfield, is one of the most important government witnesses in this case. The government expects Clare Stansfield to testify to the defendant's whereabouts on the night of the arson and that the defendant admitted to Clare that he and Dee Hoffman were responsible for the crime." Brief in Support of Government's Motion for Disqualification of Counsel at 4. Although defendant complains that he has no way of knowing that Clare Stansfield would testify as proffered by the government, the court's *in camera* review of the transcript of Clare Stansfield's testimony before the grand jury indicates that the government accurately represents the proffered testimony.

In its cover letter accompanying the transcript of grand jury testimony, the government adds the fact that defendant's current counsel, Attorney Foster, represented Clare Stansfield in a retrial on armed robbery charges in 1984. Defense counsel agreed to the manner in which this matter was presented to the court.

The conflicts of interest cited by the government, then, are: (1) the knowledge of and participation in the events surrounding the fraud allegedly perpetrated by defendant on the part of Attorney Fields; and (2) past and present representation of a cooperating government witness by members of the same firm which represents defendant.

## II. INITIAL MATTERS

■ The government's motion to disqualify defense counsel states that it is brought pursuant to Fed.R.Crim.P. 44(c). Defendant points out that Rule 44(c) relates to joint representation of multiple defendants. Brief in Opposition to Motion for Disqualification of Counsel at 1 n. 1. The misstatement of the basis for the motion is of no moment; a district court has an institutional interest in the enforcement of ethical rules governing the legal profession in order to protect the truth-seeking function and the fairness of the proceedings, to ensure the adequacy of legal representation and privacy of lawyer/client communications, and to protect a fairly rendered verdict from trial tactics designed to generate issues for appeal. *United States v. Moscony,* 927 F.2d 742, 749–750 (3d Cir.), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 984 *reh'g denied,* 501 U.S. 1270, 112 S.Ct. 16, 115 L.Ed.2d 1100 (1991). The court's inherent authority to control the proceedings before it is sufficient basis for the government's motion.

Both defendant (as "Defendant/Intervenor") and Attorney Fields have filed motions to quash the subpoena of Attorney Fields (record document nos. 25, 26). A brief in support of defendant's motion was not filed, though a brief in support of Attorney Fields' motion was filed. An "answer" to the motion was filed by "the defense" (*see* Answer to Motion at 2, "Wherefore" clause), and signed by William C. Costopoulos, Esquire, Attorney Foster, and Attorney Fields, apparently all on behalf of the firm. The brief in opposition to the government's motion for disqualification of defense counsel is signed by the same three attorneys, and its caption indicates that it is filed on behalf of Attorney Fields and Costopoulos, Foster & Fields. Since each of the documents seeking to quash the subpoena and opposing the government's motion set forth the same basic arguments, the court will construe each as having been filed on behalf of defendant, Costopoulos, Foster & Fields, and the individual attorneys involved.

## III. STANDARDS GOVERNING DISQUALIFICATION

■ The standard by which a district court must review a motion to disqualify counsel is set forth in *Moscony, supra.* The Sixth Amendment guarantees to every criminal defendant the right to effective assistance of counsel and the correlative right to counsel free from conflict of interest. *Moscony,* 927 F.2d at 748 (quoting *United States v. Gambino,* 864 F.2d 1064, 1069 (3d Cir.1988) (further citation omitted), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 566

(1989)). There also is a presumptive right on the part of a criminal defendant to counsel of choice, a critical aspect of the defense since the defendant suffers the consequences of a failed defense. *Id.* (quoting *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *Faretta v. California,* 422 U.S. 806, 820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975); *Wheat v. United States,* 486 U.S. 153, 166, 108 S.Ct. 1692, 1700–01, 100 L.Ed.2d 140 (1988) (Marshall, J., dissenting)).

With these constitutional rights must be considered the duty on the part of an attorney not to reveal confidential communications with the client. *Id.* Although technically an ethical duty to be obeyed by counsel, this duty in a sense creates a right on the part of the client not to have confidential communications revealed; that is, the ethical duty "complements, but is distinct from, the attorney-client privilege which is a right belonging to the client ..." *Moscony,* 927 F.2d at 748 and n. 1.

"The unenviable duty of reconciling these various rights and duties ... devolve[s] upon the district court." *Moscony,* 927 F.2d at 749. The rights and duties outlined above come into serious conflict when a defendant seeks to waive the right to conflict-free counsel and proceed with counsel of choice, particularly when the conflict involves past or present representation by counsel of a co-defendant, co-conspirator, or government witness. *Id.*

▮ Although a defendant may waive the right to conflict-free counsel, the court may refuse the waiver. *Moscony,* 927 F.2d at 749–750. The court's authority to refuse the waiver extends to situations in which there is a showing of a serious potential for a conflict of interest as well as to situations in which there is an actual conflict of interest. *Moscony,* 927 F.2d at 750 (citations omitted). In deciding to refuse a waiver of conflict-free counsel, the court considers: (1) the court's institutional interest in protecting the truth-seeking function of the proceedings; (2) the defendant's right to effective assistance of counsel, regardless of the proffered waiver;

(3) protection of attorney-client communications, and the candor between counsel and client such protection engenders; (4) promotion of respect for the court in general through enforcement of ethical rules; and (5) protection of a fairly rendered verdict from trial tactics designed to generate issues for appeal. *Moscony,* 927 F.2d at 749.

It should be noted that, in considering factor number (3), the protected communications are more than those of the defendant; if the attorney has represented or is representing a co-defendant, co-conspirator, or witness, the privacy of the communications with the second client also must be taken into consideration. *See, e.g., Moscony,* 927 F.2d at 750 (former representation of government witnesses). An attorney who cross-examines former clients inherently has divided loyalties. *Id.* (citations omitted).

## IV. RULES OF PROFESSIONAL CONDUCT

In reviewing whether there is an actual or potential conflict of interest, several ethical rules are applicable. "The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, except Rule 3.10, as amended from time to time by that court, unless specifically excepted in this court's rules." Local Rule for the Middle District of Pennsylvania 304.2.

The first of these ethical rules deals with confidentiality:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, ...

.    .    .    .    .

(d) The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated.

Pa.R.Prof.Conduct 1.6(a), (d).[1]

As to conflict of interest, the rules state:

---

1. The Pennsylvania Rules of Professional Conduct are reprinted following the Pennsylvania

Rules of Civil Procedure, Title 42 of Purdon's

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

.        .        .        .        .

Pa.R.Prof.Conduct 1.7(a).

With regard to former clients, the rules state:

A lawyer who has formerly represented a client in a matter shall not thereafter:

.        .        .        .        .

(b) use information relating to the representation to the disadvantage of the client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Pa.R.Prof.Conduct 1.9(b).

As to providing testimony at trial, the rules provide:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Pa.R.Prof.Conduct 3.7.

With respect to law firms, the rules provide:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practic-

Pennsylvania Consolidated Statutes Annotated

ing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2.

.        .        .        .        .

(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

Pa.R.Prof.Conduct 1.10(a).

## V.  RECOGNITION OF THE CONFLICT BY COUNSEL

In responding to the government's motion, defendant and Costopoulos, Foster & Fields complain that the government knew of the purported conflict of interest on the part of Attorney Fields long before filing the motion for disqualification. This disingenuous argument completely ignores the awareness of the same conflict of interest on the part of defendant and the firm. It was well within the knowledge of the defense that Attorney Fields had been served a subpoena for testimony before the grand jury. The stipulation to the testimony by Attorney Fields reflects the awareness of the nature of the testimony. Most importantly, the names of Attorney Fields and the law firm appear in the indictment. It appears rather obvious that counsel had a duty to address the conflict of interest at that time.

Defendant and Costopoulos, Foster & Fields raise the same argument as to Attorney Rector's conflict of interest. However, they nowhere state at what point in time the government became aware of the representation of Clare Stansfield in state court by Attorney Rector. Obviously, the court cannot consider the timeliness of a motion without being provided with the relevant time frame.

The brief in opposition to the government's motion actually is rather cryptic as to the purported knowledge on the part of the government:

This fact, too, has been known to the prosecution for many months, notwithstanding the Government's representation that it only recently discovered this pending case. Mr. Daniel [counsel for the government] personally prosecuted Clare on Federal

(1994 supp.).

drug charges [2] related to the instant state drug charges. Clare was represented by a federal public defender and was acquitted. The reason the Government knew of Mr. Rector's representation is that Mr. Rector specifically chose not to represent Clare federally because Mr. Daniel was prosecuting him; *he wanted to avoid any potential for conflict.* The underlying point is that the Government had actual knowledge that Mr. Rector was representing Clare in Cumberland County long ago.

Brief in Opposition to Motion for Disqualification of Defense Counsel at 9–10 (emphasis in original).

The docket for the case against Clare Stansfield reveals only that the Federal Public Defender had a conflict of interest, Minute Sheet of Initial Appearance (record document no. 4), and that an attorney was appointed from the Criminal Justice Act panel. Appointment of Counsel, CJA Form 20 (record document no. 9). Nothing of record indicates that the government was aware of any decision by Attorney Rector not to represent Clare Stansfield due to a conflict of interest.

Moreover, any conflict of interest on the part of Attorney Rector in the federal proceedings certainly would carry over into the state proceedings, and vice versa. Although the above-quoted portion of the brief in opposition suggests that it is the identity of the prosecutor that caused Attorney Rector's conflict of interest, it is not at all clear how such a state could exist. Another prosecutor in the federal trial would not change the fact that representation of Clare Stansfield by Attorney Rector would be a conflict of interest, i.e. representation of a client who had testified before a grand jury against another client of Attorney Rector's firm. The same conflict of interest exists for the state court proceedings as well.

In other words, this is not an instance in which only the government, with its ready access to witnesses and other evidence, was aware that an actual or potential conflict of interest might arise. There was no strategic withholding by the government of facts necessary to demonstrate a conflict of interest. The facts necessary to recognize the conflict of interest were obvious to both sides. In fact, Attorney Rector appears to have recognized as much, but acted only as to the federal proceedings. We will not attribute to the government any "bad faith" or underhanded motives as argued by defendant and his counsel.

Of course, this is not to condone the slow movement by the government. All counsel, including prosecutors, are officers of the court and have an obligation to act upon ethical concerns when they arise. It appears in this instance that the concerns were not acted upon by either side until the service of the trial subpoena upon Attorney Field. However, the conflict of interest existed long before.

### VI. CONFLICT OF INTEREST

█ That there are multiple, actual conflicts of interests present in this case is obvious from a simple review of the situation. For purposes of conflicts of interest and the constitutional and ethical concerns they entail, a law firm is regarded as one lawyer. Also, for the same purposes, the lawyer-client relationship continues beyond the actual representation. In this case, if counsel were not required to withdraw, the law firm of Costopoulos, Foster & Fields would be testifying as a witness for the government, representing another witness for the government, and representing the defendant. The multiple, actual conflicts of interest are glaring.

The defense argues, however, that Attorney Fields' testimony could be the subject of stipulation, which the government refuses. First, the court will not assume the role of prosecutor and direct the presentation of the government's case. Moreover, there is no guarantee that the stipulations will be sufficient to cover all questions which may arise at trial. Most importantly, such a stipulation would require yet another waiver from defendant: the right to cross-examine witnesses against him. Rather than alleviate the problem of counsel's conflict of interest, a stipulation simply creates another conflict.

---

**2.** Sic. Should be firearms and racketeering charges related to the state narcotics charges.

## VII. BALANCING OF FACTORS

■ Review based upon the considerations set forth in *Moscony* leads to the conclusion that counsel should be required to withdraw.

Initially, we reject any waiver by defendant as to the multiple, actual conflicts of interest which are present in his representation by current counsel. As proffered by the government and supported by review of the grand jury testimony, Clare Stansfield's testimony directly implicates defendant in the alleged burning of the Duncannon residence. Clare Stansfield therefore is an important witness adverse to the interests of defendant. Cross-examination by Attorney Foster is an example of the inherent conflict created by cross-examination of a client or former client. *Moscony*, 927 F.2d at 750. A waiver of conflict-free counsel by defendant is insufficient to protect the interest of Clare Stansfield in the same right. Clare Stansfield has a right to privacy in his own communications with counsel, and that right does not end with his sentencing in state court. Pa.R.Prof.Conduct 1.6(a), (d).

The testimony of Attorney Fields is necessary for the government's case. As noted, a number of the counts in the indictment charge defendant with mail fraud. In order to prove these charges, the government must introduce documentary evidence prepared by or otherwise handled by Attorney Fields. As noted, we will not require the government to stipulate to this testimony.

■ In the motion to quash the subpoena of Attorney Fields, six arguments are presented. First, the defense also argues that the attorney-client privilege bars this testimony. Communications which are published to third parties whose interests are adverse to the client are not protected by the attorney-client privilege. *Cf. Moscony*, 927 F.2d at 753 (but stating an exception when the third party is a co-defendant and the communication is for the purpose of a common defense; citations omitted). There is no support for the contention that the particular communications about which the government

will question Attorney Fields are privileged, particularly since the same general information previously was presented to the grand jury.

■ Defendant next argues that the disclosures would violate the work-product doctrine. The work-product doctrine "protect[s] the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Westinghouse v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *United States v. AT & T*, 642 F.2d 1285, 1299 (D.C.Cir.1980)). Disclosure of the work product to an adversary waives the privilege. *Id.*

There is no support for the contention that the documents prepared by Attorney Fields were prepared in anticipation of litigation. To the extent that they may have been prepared for that purpose, the privilege was waived through their disclosure to Erie, the adversary in any civil proceedings related to defendant's claims under the insurance policy. To the extent that the government may be considered the adversary,[3] the privilege was waived by presentation of the documents for purposes of the grand jury proceedings. The work-product doctrine does not bar Attorney Fields' testimony.

■ Defendant next claims that his Fifth Amendment right against self-incrimination would be violated if Attorney Fields were called to testify against him. Any statements made by defendant to Attorney Fields were not testimonial in nature at the time they were made. This argument in essence leads to the conclusion that a defendant's admissions are inadmissible at trial. Obviously, we decline to so hold.

Defendant's next argument concerns his right to counsel. He contends that his right to counsel would be violated through the necessity of disqualifying defense counsel. Actually, the right in question is the right to counsel of choice, since defendant may substitute counsel for his current counsel.

---

**3.** A remarkable notion, since defendant's indictment would hardly have been "anticipated" at the time the documents were prepared.

As discussed above, the right to counsel of choice is not absolute and must be balanced against a number of competing interests, including Clare Stansfield's right to conflict-free counsel, defendant's right to conflict-free counsel, the court's interest in the integrity of the proceedings, and counsel's ethical duties. We find that the competing interests outweigh defendant's right to counsel of choice. Counsel has not one but several conflicts of interest, the impact of which may not be alleviated easily. The impact on Clare Stansfield cannot in any way be minimized. And allowing counsel to continue would open a number of avenues for appeal and undermine confidence in these proceedings. In balancing all of these interests, defendant's right to the effective assistance of counsel is protected, not violated.

Defendant's fifth argument is that the government is attempting to undermine the credibility of defense counsel by calling Attorney Fields to testify. The disqualification of defense counsel eliminates this concern.

Finally, defendant argues that the service of the subpoena constitutes prosecutorial overreaching and is in bad faith. We disagree. The government clearly needs the testimony of this witness to establish its case. There was no claim of bad faith when the government issued a subpoena to Attorney Fields for purposes of the grand jury. The government did not create the conflict of interest; it existed long before issuance of the subpoena.

In separate arguments, Attorney Foster and Costopoulos, Foster & Fields argue that (1) the U.S. Attorney's Manual requires that Attorney Fields' testimony be presented via stipulation, and (2) that there is no conflict in the firm's representation of Clare Stansfield.

No authority is cited to support the contention that internal operating procedures such as the U.S. Attorney's Manual create substantive rights on the part of defendant; in fact, the opposite appears to be the case. *See, e.g., United States v. Pungitore,* 910 F.2d 1084, 1120 (3d Cir.1990) (internal rule of the Department of Justice known as the *"Petite* policy" does not create substantive rights for defendants), *cert. denied,* 500 U.S. 915, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991).

As to the representation of Clare Stansfield, the issues involved are discussed at length above. We address only the fact that the representation of Clare Stansfield by Attorney Rector and Attorney Foster related to matters other than the circumstances of defendant's indictment. Attorney Foster and the firm point out that, in *Moscony,* the former representation was of co-defendants. They argue that the representation must be substantially related to the charges against the current client.

The *Moscony* opinion actually places no such limitation upon the finding of a conflict of interest. In fact, the opinion relies upon *Lightbourne v. Dugger,* 829 F.2d 1012 (11th Cir.), *reh'g denied,* 835 F.2d 291 (11th Cir. 1987) (table), *cert. denied,* 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988), for the rule that an attorney who cross-examines a former client inherently encounters divided loyalties. In *Lightbourne,* a cell-mate of the defendant testified regarding admissions by the defendant made while in jail. *Id.,* 829 F.2d at 1016. The 11th Circuit found at least a potential conflict of interest because the cell-mate had been represented formerly by an assistant public defender, and the defendant was then represented by another assistant public defender. *Id.,* 829 F.2d at 1023. Whether an "actual" conflict arose was related to the question of whether a public defender's office has a conflict of interest under federal law when it represents clients with adverse interests. *Id.,* 829 F.2d at 1023 and n. 12. However, the facts of that case reflect representation of clients with adverse interests in separate cases. The Third Circuit's citation to this case demonstrates that the rule that a lawyer encounters a conflict of interest when cross-examining a former client is not limited as Attorney Foster and Costopoulos, Foster & Fields contend.

This argument also ignores the interest that is protected by the general rule. The attorney necessarily has knowledge of confidences the former client expects to remain private. Yet the attorney, in advocating for his current client, has a duty to use his knowledge to impeach the former client/wit-

ness. This conflict arises regardless of the subject matter of the former representation.

 Finally, Attorney Foster and Costopoulos, Foster & Fields argue that disqualification should be denied because Clare Stansfield has not moved for disqualification. In support, they cite *United States v. Rogers,* 9 F.3d 1025, 1031 (2d Cir.1993), *cert. denied,* — U.S. ——, 115 S.Ct. 95, 130 L.Ed.2d 45 (1994), in which the Second Circuit held that only the former client may move for disqualification of counsel.

The first problem with this argument is that the conflict of interest related to the former representation is not isolated: there is also a conflict related to the testimony of Attorney Fields.

There are other problems with the rule that only the former client may move to disqualify counsel that are not addressed by the Second Circuit. First, the attorney or law firm has the responsibility of informing the client of the conflict of interest and its implications. Absent such information, it is not at all likely that the former client will move for disqualification. Second, counsel has an affirmative duty to come forward with potential conflicts of interest, so that a motion for disqualification should be superfluous. Finally, this rule ignores the interest of the court in protecting the integrity and fairness of the proceedings before it, regardless of how and by whom the conflict of interest is presented.

## VIII. CONCLUSION

Based upon constitutional right to effective and conflict-free counsel and the Pennsylvania Rules of Professional Conduct, defendant's counsel will be disqualified. Counsel, individually and through the law firm of Costopoulos, Foster & Fields, has obvious, multiple, actual conflicts of interest. The balancing of the competing interests involved weighs heavily in favor of disqualifying counsel.

We recognize that the conflict of interest could have been brought before the court at a much earlier stage of the proceedings by either defense or government counsel. However, the timing of the motion for disqualification does not alter our conclusion, based upon the number and serious nature of the conflicts. Attorney Foster and the law firm of Costopoulos, Foster & Fields will be prohibited from representing defendant in any further proceedings related to this matter.

We also recognize the difficulty placed upon defendant by this decision. The case will be continued to allow defendant to retain substitute counsel, and for counsel to become familiar with the case.

The government's motion for disqualification of counsel will be granted. The defense motions to quash the subpoena of Attorney Fields will be denied. The defense request for an evidentiary hearing will be denied as moot.