**Harry DANIELS, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. A–7835.**

Court of Appeals of Alaska.

Jan. 26, 2001.

---

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Petitioner.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Harry Daniels is being prosecuted for murder. Until recently, Daniels was represented by Assistant Public Defender Michael Dieni. But three months ago, Superior Court Judge Michael Wolverton granted the State's motion to disqualify Dieni from any further involvement in this case. Daniels asks us to review and reverse Judge Wolverton's decision, so that Dieni can remain his trial attorney.

This case requires us to examine Dieni's duty of loyalty and confidentiality to his current client, Daniels. We must also examine the duty of confidentiality that Dieni owes to his former client, Saganna. Finally, we must explore a trial judge's independent authority to disqualify an attorney in order to preserve the integrity of the judicial process. As we explain in detail below, we conclude that Dieni's continued participation in this case will not violate his duty toward his current client or his duty toward his former client, nor will Dieni's participation adversely affect the integrity of the proceedings so as to trigger the trial court's independent authority to order his disqualification. We therefore grant this petition for review and reverse the superior court's decision to disqualify Dieni.

*Underlying Facts*

The victim in this case, Phillip Harry, was beaten to death. Daniels and a woman named Kate Saganna were the only two people with Harry when he died. Dieni has announced that, to defend Daniels, he will suggest that Saganna committed the homicide.

Ten years ago, Dieni represented Saganna in an unrelated assault prosecution. (Saganna was indicted for second-degree assault; she ultimately pleaded no contest to a reduced charge of third-degree assault.) Dieni had forgotten about the prior case until it was brought to his attention, and he claims to have no memory of it aside from what is reflected in the court file. Nevertheless, because Dieni previously represented Saganna in a criminal matter, the State claimed that he had a disqualifying conflict of interest.

When the State filed its motion, Judge Wolverton asked both Daniels and Saganna to declare their positions regarding Dieni's potential conflict of interest. Daniels (represented for this purpose by independent counsel) waived whatever conflict of interest

Dieni might have on account of his prior representation of Saganna. Saganna (represented by a different attorney) announced that she would not waive her right to complain of a conflict of interest—but Saganna's attorney also declared that, after examining the matter fully, he and his client did not perceive any conflict of interest.

### Judge Wolverton's ruling

Judge Wolverton ruled that Dieni should be disqualified from representing Daniels on account of his prior representation of Saganna. Although neither Dieni's current client (Daniels) nor his former client (Saganna) objected to the situation, Judge Wolverton concluded that "[the] court has an independent duty to question the propriety of permitting Mr. Dieni to continue representing Daniels in this case."

Judge Wolverton believed there was some risk that, even though Dieni could not currently remember the details of Saganna's ten-year-old assault case, his memory might be refreshed as he continued to prepare Daniels's defense, or might be jogged by events at trial. Judge Wolverton also believed there was some danger that, during trial, when Dieni cross-examined Saganna and suggested that she committed the homicide, Saganna might change her mind about whether Dieni had a conflict of interest. This would potentially leave the court in the awkward position of having to declare a mistrial so that Daniels could obtain a new, conflict-free attorney.

But Judge Wolverton's precise legal basis for disqualifying Dieni appears to be his conclusion that, under Professional Conduct Rule 1 .9, the law presumes that any attorney will know secrets or confidences imparted by former clients. Applying this presumption to Daniels's case, Judge Wolverton concluded that, even though Saganna and her independent counsel declared that they knew of no secret or confidence that Dieni might use against Saganna, the law nevertheless required Dieni's removal from the case.

Judge Wolverton specifically ruled that it was irrelevant whether Saganna had identified any secret or confidence that Dieni might use against her:

[I]t is neither realistic nor reasonable to expect that a former client—particularly one who is about to be attacked and accused by her former attorney as being the perpetrator of a homicide—would reveal any prior inculpatory confidences. Any client in this position would clearly not want to say *anything* which might jog her former attorney's memory to her detriment.

(Emphasis in the original)

The judge then relied on a portion of the commentary to Rule 1.7 of the American Bar Association's Model Rules of Professional Conduct—language that appears *verbatim* in the commentary to Alaska Professional Conduct Rule 1.7:

As a general proposition, loyalty to a client prohibits [a lawyer from] undertaking representation directly adverse to that client without that client's consent. . . . Thus, a lawyer ordinarily may not act as an advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated.

Alaska Rules of Professional Conduct, Rule 1.7, "Comment", paragraph 2.

Based on this commentary, Judge Wolverton ruled that Dieni was prohibited from taking a position adverse to Saganna, even though the current murder prosecution against Daniels is wholly unrelated to the ten-year-old assault charge against Saganna.

### Overview of the problem

This case presents the question of whether an attorney should be disqualified from representing a criminal defendant because the attorney previously represented a person who is expected to be an important witness and who is, herself, a potential suspect. To resolve this question, we must consider three interests.

First, Dieni owes a duty of loyalty and confidentiality to his current client, Daniels. A lawyer's duty to current clients is codified in Professional Conduct Rule 1.7. Next, Dieni owes a similar but less exacting duty to his former client, Saganna. A lawyer's duty to former clients is codified in Professional

Conduct Rule 1.9. Finally, even when the current client and the former client are both willing to accept the lawyer's participation in the case, the trial judge has independent authority to disqualify the attorney to preserve the fairness of the trial and the integrity of the judicial process.

*Dieni's duty to his current client, Daniels*

■ Under Professional Conduct Rule 1.7(b), Dieni must cease representing Daniels if "[his] representation of [Daniels]· may be materially limited by [his] responsibilities to … a third person". In this case, Dieni owes responsibilities to his former client, Saganna. As explained in more detail in the next section, Dieni's chief responsibility to Saganna is to maintain the secrets and confidences that Saganna imparted to him during their attorney-client relationship.

Conceivably, when the interests of a former client conflict with the interests of a current client, lingering loyalty to the former client might deter an attorney from being a zealous advocate for the current client. But in the present case, no one has suggested that Dieni would "pull his punches" at Daniels's trial because of lingering loyalty to Saganna. Dieni did not even remember that he had represented Saganna.

Another potential danger is that, in the earlier attorney-client relationship, the attorney may have learned secrets or confidences from the former client that are now important to a proper defense of the attorney's current client. Professional Conduct Rule 1.9(c) bars a lawyer from revealing a former client's secrets and confidences or using those secrets and confidences to the disadvantage of the former client (except as permitted or required by Professional Conduct Rule 1.6 or Rule 3.3).[1] In such a situation, if the attorney follows the Rules of Professional Conduct and preserves the former client's confidences, the attorney may fail to effectively defend the current client.

But in the present case, no one has identified any pertinent secrets or confidences that Saganna might have imparted to Dieni. And, in any case, Daniels has explicitly

waived any potential conflict. This waiver appears to be informed and voluntary. Daniels knows that Dieni represented Saganna ten years ago, and even after all the proceedings on this issue, Daniels still wants Dieni to be his attorney. Judge Wolverton has not suggested any reason to distrust Daniels's waiver of the potential conflict.

*Dieni's duty to his former client, Saganna*

■ Judge Wolverton did not disqualify Dieni based on the perception that Dieni might fail to zealously defend Daniels. Rather, Judge Wolverton's ruling was based on the opposite perception: the judge's concern that Dieni's loyalty to Daniels might prompt him to violate Professional Conduct Rule 1.9 by unlawfully attacking Saganna with information he obtained in confidence when he was Saganna's lawyer ten years ago.

As explained above, Judge Wolverton relied heavily on a portion of the commentary to Professional Conduct Rule 1.7:

> [A] lawyer ordinarily may not act as an advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated.

Professional Conduct Rule 1.7, "Comment", paragraph 2. Based on this commentary, Judge Wolverton concluded that Dieni could not ethically take a position adverse to Saganna, even though the murder prosecution against Daniels is wholly unrelated to the ten-year-old assault charge against Saganna.

But Judge Wolverton's reliance on this comment is misplaced. The comment describes the effect of Professional Conduct Rule 1.7—the rule that forbids a lawyer from taking on or pursuing legal work on behalf of a new client if that legal work involves taking a position adverse to the interests of a *present* client. That is not the problem here. Dieni's present client is Daniels, and Dieni is not pursuing any legal work antagonistic to Daniels's interests.

Because the problem is the potential conflict between Dieni and a *former* client, Saganna, Professional Conduct Rule 1.7 does not govern this case. Instead, Rule 1.9 does.

---

1. "Secret" and "confidence" are defined in Professional Conduct Rule 1.6(a).

Rule 1.9, the conflict-of-interest rule that deals with former clients, differs significantly from Rule 1.7. As Judge Wolverton correctly noted, Rule 1.7 ordinarily bars a lawyer from "act[ing] as an advocate against a [present client], even if [the matter] is wholly unrelated" to the work the lawyer is doing for that present client. But with respect to former clients, the rule of disqualification is not so broad. Rule 1.9(a) declares that a lawyer who has represented a person in the past ordinarily must not represent another client "in the same or a substantially related matter in which the [new client's] interests are materially adverse to the interests of the former client".

■ The important difference is this: With respect to *present* clients, the rule of disqualification extends to *any* legal work— even legal work that is "wholly unrelated" to the work the lawyer is performing for their present client—if the new work would require the lawyer to take a position directly adverse to their present client's interests. But with respect to *former* clients, the rule of disqualification extends only to legal work "in the same [matter]" or to work that is "substantially related" to the matter in which the lawyer represented the former client. In all other situations, the lawyer may ethically take a position that is directly adverse to a former client's interests—so long as the former client's secrets and confidences are preserved as required by Rule 1.9(c).

The present murder charge against Daniels is not the same matter as the ten-year-old assault prosecution against Saganna, nor are these two proceedings "substantially related" within the meaning of Professional Conduct Rule 1.9(a).[2] Thus, in representing Daniels in the current murder case, Dieni is free to take a position adverse to Saganna's interests so long as he does not reveal or use any information he received in confidence from Saganna while he represented her in the assault case.

Dieni has stated that he has no independent recollection of the assault case; one can therefore infer that he has no memory of any secrets or confidences imparted by Saganna. For her part, Saganna consulted independent counsel and then told Judge Wolverton that she saw no conflict and that she did not object to Dieni's continuing to represent Daniels. Saganna thus implicitly declared that neither she nor her attorney could identify any secret or confidence that Dieni might use against her.

*A trial court's authority to disqualify an attorney even though the attorney's present and former clients do not object to the attorney's participation*

■ Under the Sixth Amendment to the United States Constitution and Article I, Section 11 of the Alaska Constitution, defendants in criminal cases are guaranteed the effective assistance of counsel. For defendants who hire their own attorney, the right

2. Courts apply varying tests to determine whether legal matters are "substantially related" for purposes of Professional Conduct Rule 1.9(a). See the cases collected in *Adoption of Erica*, 426 Mass. 55, 686 N.E.2d 967, 970 (1997).

Some courts hold that matters are "substantially related" only when the issues involved are identical or virtually identical. See *Lightning Park v. Wise, Lerman, & Katz*, 197 A.D.2d 52, 609 N.Y.S.2d 904, 906 (1994); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 740 (2nd Cir.1978). Other courts look to whether the legal issues are substantially the same or closely interwoven. See *Angleton v. Estate of Angleton*, 671 N.E.2d 921, 928 (Ind.App.1996); *Lawyer Disciplinary Board v. Printz*, 192 W.Va. 404, 452 S.E.2d 720, 724 (1994). Finally, some courts look to whether the operative facts of the two cases are so closely related that one would reasonably expect the attorney to have acquired pertinent confidential information from the for-

mer client—*i.e.*, information that is protected by Rule 1.6 or Rule 1.9(c) and that would predictably be used to the detriment of the former client by a zealous, conflict-free advocate. See *Carragher v. Harman*, 220 Ga.App. 690, 469 S.E.2d 443, 445 (1996); *SLC Limited V v. Bradford Group West, Inc.*, 999 F.2d 464, 467–68 (10th Cir.1993); *Matter of Guardianship of Tamara L.P.*, 177 Wis.2d 770, 503 N.W.2d 333, 337–38 (1993); *Contant v. Kawasaki Motors Corp. U.S.A., Inc.*, 826 F.Supp. 427, 429 (M.D.Fla.1993); *Ramada Franchise System v. Hotel of Gainesville Associates*, 988 F.Supp. 1460, 1463, 1465–66 (N.D.Ga.1997); *Commonwealth Insurance Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1204–05 (E.D.Pa.1992).

Under any of these tests, the ten-year-old assault prosecution against Saganna is not related to the pending murder prosecution against Daniels.

to counsel encompasses a conditional right to counsel of the defendant's choosing.[3]

Even so, courts have the authority to disqualify a defense attorney if this is necessary to ensure the integrity of the judicial process:

[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate ... rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*United States v. Locascio*, 6 F.3d 924, 931 (2nd Cir.1993). Thus, a defendant's right to waive their attorney's conflict of interest is not absolute; "[the] courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." [4]

Because of the independent value placed on the adversarial process, a defendant's presumptive entitlement to counsel of their choice "can be overcome by a showing of an actual conflict [of interest] or [a] potentially serious conflict." [5] Nevertheless, a defendant's informed waiver of a potential conflict of interest should be honored "so long as the [continued participation of the attorney] does not seriously compromise the integrity of the judicial process." [6]

In the present case, Daniels is indigent, and he is represented by the Public Defender Agency. Although indigent defendants have the right to an attorney at public expense, they have no right to demand a particular attorney.[7]

Thus, even leaving Judge Wolverton's ruling aside, Daniels has no right to demand that Dieni represent him. The Public Defender Agency has the discretion to assign another attorney to Daniels's case. Here, however, the superior court has effectively ordered the Public Defender Agency to assign a new attorney to Daniels's case—not at the Agency's behest, but at the request of the State.

We acknowledge that the State has an interest in making sure that trials are conducted fairly and that potential reversible errors are addressed and remedied. Nevertheless, motions to disqualify an opposing litigant's attorney can also be used as a tactic to weaken or disrupt the presentation of an opponent's case.[8] Moreover, when (as here) the ostensible reason for disqualification is the attorney's conflicting loyalty to a former client, the normal rule is that "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification".[9]

One of the leading cases on this issue is *In re Yarn Processing Patent Validity Litigation.*[10] In *Yarn Processing*, one defendant was the former client of another co-defendant's attorney. The former client moved to disqualify the attorney but, before the motion was decided, the case against the former

3. See *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). This right to counsel of choice is not absolute. In *Wheat*, the Supreme Court held that a criminal defendant's choice of counsel can be overridden by the rules limiting an attorney's ability to jointly represent two or more co-defendants—in particular, the rule forbidding joint representation when the co-defendants have an actual conflict of interest. *Id.*, 486 U.S. at 162, 108 S.Ct. at 1698.

4. *Locascio*, 6 F.3d at 931.

5. *Id.*

6. *United States v. Rahman*, 837 F.Supp. 64, 70 (S.D.N.Y.1993) (quoting *Locascio*, 6 F.3d at 933–34).

7. See *Coleman v. State*, 621 P.2d 869, 878 (Alaska 1980); *Annas v. State*, 726 P.2d 552, 557 (Alaska App.1986).

8. See *Colyer v. Smith*, 50 F.Supp.2d 966, 973 (C.D.Cal.1999) ("Because of this potential for abuse, disqualification motions [brought by third parties] should be subjected to particularly strict judicial scrutiny.") (quoting *Optyl Eyewear Fashion International v. Style Companies*, 760 F.2d 1045, 1050 (9th Cir.1985)).

9. *United States v. Rogers*, 9 F.3d 1025, 1031 (2nd Cir.1993) (quoting *United States v. Cunningham*, 672 F.2d 1064, 1072 (2nd Cir.1982)). The original source of this language is *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir.1976).

10. 530 F.2d 83 (5th Cir.1976).

client was dismissed. Another co-defendant then attempted to renew the motion to disqualify. The Fifth Circuit held that only the former client could object to the potentially adverse representation:

> To allow an unauthorized surrogate to champion the rights of the former client would allow the surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist. It would place in the hands of the unauthorized surrogate powerful presumptions which are inappropriate in [such circumstances.] ... We are reluctant to extend [the power to disqualify an attorney] where the party receiving such an advantage has no right of his own which is being invaded.

530 F.2d at 90. The Fifth Circuit suggested, however, that it might make an exception when the attorney's ethical violation was "manifest and glaring" or "open and obvious", thus confronting the trial judge with "a plain duty to act".[11]

██ In the present case, the former client—Saganna—has declared (after consultation with independent counsel) that she does not object to Dieni's continuing to represent Daniels. Under these circumstances, we agree with the Public Defender Agency that the superior court must not interfere with the Agency's assignment of Dieni to this case unless the court has a substantial reason for believing that, despite Saganna's lack of objection, Dieni's continued participation in the case will likely create injustice or "seriously compromise the integrity of the judicial process".[12]

██ In deciding whether a defense lawyer's prior attorney-client relationship with a government witness will create injustice or compromise the integrity of the judicial process, courts look to several factors. We have already discussed two of these factors: the possibility that the lawyer might be impeded from zealously representing their current client because of the ethical duty to their former client, and the converse possibility that the lawyer might take unlawful advantage of attorney-client confidences when cross-examining their former client.

██ As explained above, Daniels has waived whatever conflict of interest might arise from Dieni's prior representation of Saganna. Yet courts have a duty to see that a criminal defendant receives effective assistance of counsel, regardless of the defendant's ostensible willingness to waive this right.[13] Although courts should normally accede to the defendant's informed choice on this issue, some courts have ruled that a trial judge may reject a defendant's waiver of their attorney's conflict of interest if the "conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation."[14]

██ In Daniels's case, there is no evidence of this type of egregious conflict. Dieni's announced trial strategy (to accuse his former client, Saganna, of the homicide) indicates a zealous loyalty to Daniels. And with regard to the possibility that Dieni might be placed in an ethical dilemma if, to pursue this defense, he needed to use information received from Saganna in confidence, we note that neither Dieni nor Saganna nor Saganna's attorney has identified any pertinent client confidence that Saganna might have imparted to Dieni ten years ago.

██ In addition to protecting a defendant's right to the effective assistance of counsel, courts also have a responsibility to protect the verdict from trial tactics that are

---

11. *Id.* at 89. *See also In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221–22 (Del.1990) (holding that a third party has standing to raise an attorney's ethical breach if the conflict of interest so infects the litigation as to impair the moving party's right to a just and lawful litigation of their claims).

12. *United States v. Rahman*, 837 F.Supp. 64, 70 (S.D.N.Y.1993) (quoting *Locascio*, 6 F.3d at 933–34).

13. *See United States v. Stansfield*, 874 F.Supp. 640, 643 (M.D.Pa.1994).

14. *United States v. Gotti*, 9 F.Supp.2d 320, 324 (S.D.N.Y.1998) (quoting *United States v. Lussier*, 71 F.3d 456, 461 (2nd Cir.1995)). *See also United States v. Leslie*, 103 F.3d 1093, 1098 (2nd Cir.1997).

designed to generate issues for appeal.[15] This problem could arise when the defendant and the witness are potentially linked by affection or common interest—for example, in organized crime prosecutions when the government witness is a present or former associate of the defendant. In such cases, courts must be vigilant against the possibility that the defendant and the witness are waiving potential conflicts of interest with the idea that, if the verdict is unfavorable, the defendant can later attack the waiver as involuntary or uninformed. In Daniels's case, however, there is no indication that Daniels and Saganna have a motivation to engage in such joint tactics.

 Finally, when (as in Daniels's case) the issue is a defense attorney's potentially conflicting loyalty to a government witness, courts should also consider society's interest in protecting the secrecy of attorney-client communications.[16] The attorney-client privilege serves the cause of justice by promoting candor between counsel and client— candor encouraged by the promise that the lawyer will not later reveal the client's confidences or use them to advance the cause of another client.

Even though the witness in this case, Saganna, has voiced no objection to Dieni's continued participation as Daniels's attorney, some courts have recognized the government's interest in "protecting its witnesses from tactics that are unfair"—*e.g.*, cross-examination that is based on, or derived from, protected client confidences.[17] Nevertheless, a court should rarely disqualify an attorney based on a former attorney-client relationship if the former client does not seek the attorney's disqualification. As the Second Circuit said in *United States v. Rogers,*

> No case has been called to our attention, and we are aware of none, in which an

attorney has been disqualified on grounds of conflicting prior representation solely at the behest of a person other than the former client or [a successor to the former client's privilege]. As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification. The refusal to disqualify in the absence of a motion by the former client is all the more appropriate in the context of a criminal prosecution with its implication of constitutional rights.

9 F.3d 1025, 1031 (2nd Cir.1993) (internal quotations omitted).

 Thus, when the former client—the one whose interests are ostensibly at stake— fails to join the government's motion to disqualify the defense attorney, this fact "strongly militates against a finding that disqualification . . . is mandated." [18]

As explained above, Dieni asserted that he had no conflict of interest, and Saganna (after consultation with independent counsel) reached the same conclusion. Yet Judge Wolverton was unwilling to accept Dieni's and Saganna's position that there was no conflict of interest. The judge speculated that, while Dieni was preparing or presenting Daniels's defense, something might jog Dieni's memory and he might recollect something about Saganna's assault case. Although this possibility can not be ignored, it does not lead to the conclusion that Dieni is violating the Rules of Professional Conduct by representing Daniels.

 It must be emphasized that Professional Conduct Rule 1.9(c) does not bar Dieni from using any and all knowledge he may have (or come to remember) about Saganna's case. Rather, the rule only bars Dieni from using Saganna's "secrets" or "confidences"

---

**15.** *See United States v. Moscony,* 927 F.2d 742, 749–750 (3rd Cir.1991).

**16.** *See United States v. Moscony,* 927 F.2d 742, 749–750 (3rd Cir.1991); *United States v. Stansfield,* 874 F.Supp. 640, 643 (M.D.Pa.1994).

**17.** *United States v. James,* 708 F.2d 40, 46 (2nd Cir.1983); *United States v. Falzone,* 766 F.Supp. 1265, 1275 (W.D.N.Y.1991).

**18.** *United States v. Gehl,* 852 F.Supp. 1135, 1147 (N.D.N.Y.1994). *See also Chrispens v. Coastal Ref. and Marketing, Inc.,* 257 Kan. 745, 897 P.2d 104, 122–23 (1995); *Blitch Ford, Inc. v. MIC Property and Casualty Ins. Corp.,* 980 F.Supp. 1261 (M.D.Ga.1997). *Compare United States v. Stansfield,* 874 F.Supp. 640, 645 (M.D.Pa.1994) (an attorney has an affirmative duty to disclose potential conflicts).

against her.[19] Thus, even if Dieni comes to remember details of Saganna's ten-year-old case, these memories would raise no ethical duty unless the details concerned Saganna's secrets or confidences, and unless those secrets or confidences were important to Dieni's defense of Daniels.

In ruling that Dieni should be disqualified from serving as the defense attorney in this case even though Saganna had no objection, Judge Wolverton relied on language found in the "Legal Background" portion of the American Bar Association's commentary to Model Rule of Professional Conduct 1.9:

> Rule 1.9 presumes that a lawyer had access to confidential information in the previous representation or employment. This presumption relieves the [former] client of the need to prove that the ... lawyer had confidential information—a task that could require the client to disclose the very things he or she wanted kept secret.

American Bar Association, *Annotated Model Rules of Professional Conduct* (Fourth Edition, 1999), commentary to Rule 1.9, section entitled "Presumption that Confidential Information was Acquired During the Prior Representation", p. 148.

■■■ But Judge Wolverton overlooked the fact that the ABA amended Model Rule 1.9 in 1989. It is this amended version of the rule that the Alaska Supreme Court adopted in 1993. The amended rule altered the presumption discussed in the above-quoted commentary. In a section of commentary entitled "Amendment of the Rule", the ABA discusses the 1989 amendment to Rule 1.9 and its effect on the presumption that an attorney possesses confidential information about a client:

> In 1989, the ABA amended Rule 1.9 and imported subsection (b) from Rule 1.10, *Imputed Disqualification: General Rule.*

This change can be construed as a strong signal that Rule 1.9 does indeed allow a lawyer to rebut the presumption that he or she received confidential information during the previous representation.

*Annotated Model Rules of Professional Conduct* (Fourth Edition, 1999), p. 149. The ABA commentary then cites several illustrative cases. In one of these cases, *In re Del-Val Financial Corp.*[20], the court denied a motion to disqualify based in part on the fact that the challenged lawyer had no recollection of receiving any confidential information from the former client.

Another case, *Gaumer v. McDaniel*[21], went even further. The court apparently assumed that the attorney might have gained confidential information from the former client; nevertheless, the court required an affirmative showing that the former client's confidences could be used to the client's detriment.

According to the *Gaumer* court, "the essential inquiry is whether ... any confidential communications from the [former client] to the [attorney] could be detrimental to the [former client] in the present case."[22] The court declared that there are two aspects to this question. First, did the former client impart "any confidential communications to the [attorney] which are substantially related to the instant lawsuit? Second, ... if there were such communications, is there any likelihood that [these] communications could be used to the detriment of the [former client]?"[23]

The *Gaumer* court cautioned that, "[w]hen resolving this question, [a] court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information might have been disclosed which would be

---

**19.** Under Rule 1.6(a), a "confidence" is any information protected by the attorney-client privilege, while a "secret" is "other information gained in the professional relationship if the client has requested [that] it be held confidential or if it is reasonably foreseeable that disclosure of the information would be embarrassing or detrimental to the client."

**20.** 158 F.R.D. 270 (S.D.N.Y.1994).

**21.** 811 F.Supp. 1113 (D.Md.1991), *aff'd* 23 F.3d 400 (4th Cir.1994).

**22.** *Id.* at 1118.

**23.** *Id.*

relevant to the present suit."[24] The rationale behind this cautious approach was explained by the Fifth Circuit in its decision, *In re Yarn Processing Patent Validity Litigation:*

> The ... rules relating to attorney conflicts of interest are designed to allay any apprehension a client may have in frank discussion of confidential information with his attorney. Public confidence in the privacy of this discussion [will] not be impaired where the former client, having every opportunity to do so, fails to object to a new relationship involving his former attorney, and where the [alleged] unethical nature of the attorney's change of sides is not manifest[.]

530 F.2d 83, 90 (5th Cir.1976).

We have found several cases in which courts have disqualified a defense attorney because the attorney previously represented an important government witness. In some of these cases, the witness affirmatively objected to the attorney's participation.[25] Almost without exception, the remaining cases involved situations where (1) the witness and the defendant (the attorney's present client) were both involved in the same criminal transactions or enterprises that formed the basis of the government's current case against the defendant, and (2) the attorney (or other members of the attorney's firm) represented or counseled the witness during an earlier stage of the same (or a closely related) criminal investigation.[26]

The facts of the present case do not fit this mold. Dieni represented Saganna ten years ago in a completely unrelated assault case. To the extent that Saganna's conviction for assault might be admissible evidence in Daniels's murder prosecution, Dieni's knowledge of Saganna's conviction does not rest on confidential information, and it does not appear that his arguments for the admissibility of that conviction would rest on confidential information either.

No one whose interests are at stake—Daniels, Saganna, and Dieni—has asserted or suggested that a conflict of interest arises from Dieni's prior attorney-client relationship with Saganna. One may speculate that, at some point in the future, Dieni might recall some confidence imparted by Saganna and realize that this confidential information is relevant to Daniels's defense. But, on the present record, this would only be speculation. There is currently no articulable reason to believe that anything Dieni and Saganna discussed (as attorney and client) ten years ago would be pertinent to the litigation of the murder charge against Daniels.

### Conclusion

For these reasons, we conclude that Judge Wolverton abused his discretion when he disqualified Dieni from further service as Dan-

**24.** *Id.* (quoting *Satellite Financial Planning v. First Nat'l Bank of Wilmington,* 652 F.Supp. 1281, 1284 (D.Del.1987)).

**25.** *See United States v. Voigt,* 89 F.3d 1050, 1079 (3rd Cir.1996); *United States v. Rogers,* 9 F.3d 1025, 1031 (2nd Cir.1993); *United States v. Gotti,* 9 F.Supp.2d 320, 325–26 (S.D.N.Y.1998).

**26.** *See United States v. Voigt,* 89 F.3d 1050, 1077–1080 (3rd Cir.1996); *United States v. Iorizzo,* 786 F.2d 52, 57–58 (2nd Cir .1986); *United States v. Gotti,* 9 F.Supp.2d 320, 325–26, 328–29 (S.D.N.Y.1998); *United States v. Alex,* 788 F.Supp. 359, 363 (N.D.Ill.1992). Compare another portion of the *Gotti* decision, 9 F.Supp.2d at 329–331, where the court ruled that an attorney's prior representation of a witness in a completely separate investigation does not require the attorney's disqualification if both the present client and the former client give their informed consent.

But compare *United States v. Stansfield,* 874 F.Supp. 640 (M.D.Pa.1994), in which the court removed a defense attorney even though the government witness (the former client) did not object and the prior legal representation involved an unrelated case. The government witness (and former client) was the defendant's brother. The defense attorney's law firm had previously represented the brother in an earlier case, but the earlier case was not related to the present prosecution. *Id.* at 641. Nevertheless, the court disqualified the defense attorney. *Id.* at 648. This decision might be explained by the court's wariness of the family tie between the defendant and the witness. More important, perhaps, was the fact that the attorney's prior link to the defendant's brother was only one conflict of interest among many. *Id.* at 645. Moreover, it appeared that other members of the defense attorney's law firm were likely to be called as government witnesses. *Id.* at 644.

iels's defense attorney. The decision of the superior court is REVERSED.